IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:23-CV-347-RJC-DCK

| MARKAYLE GRAY, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) MEMORANDUM AND |
| | ) RECOMMENDATION |
| CHARLOTTE SECONDARY SCHOOL INC., and BOARD OF DIRECTORS OF CHARLOTTE SECONDARY SCHOOL INC., | ) |
| Defendants. | ) |

**THIS MATTER IS BEFORE THE COURT** on Defendant Board of Directors of Charlotte Secondary School Inc.'s "Motion To Dismiss" (Document No. 14). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and applicable authority, the undersigned will respectfully recommend that the motion be <u>denied</u>.

### I. BACKGROUND

Plaintiff Markayle Gray ("Plaintiff" or "Gray") initiated this lawsuit with the filing of a "Complaint" (Document No. 1) against Defendants Charlotte Secondary School Inc. ("Charlotte Secondary School") and the Board of Directors of Charlotte Secondary School Inc. ("Defendant" or "the Board") (collectively, "Defendants") in this court on June 12, 2023. In his Complaint, Plaintiff alleges that he was a 7th and 8th grade English teacher at Charlotte Secondary School, a charter school in Mecklenburg County during the 2022-2023 academic year. (Document No. 1, pp. 2, 4). Gray alleges that "Charlotte Secondary has a student population that is approximately 80-85% black, Hispanic, or biracial, but its teaching pool is split evenly between whites and people

of color." Id. at p. 4. According to Gray, diversity is a stated core principle of Charlotte Secondary School. Id.

Gray contends that as an English teacher, he was "obligated to obtain permission for [his] course offerings and [] reading list[] from [his] department head or the school principal," who at the time was Keisha Rock. Id. He allegedly "obtained permission from Rock to build a lesson plan for his 7th Grade honors track class around the novel, 'Dear Martin.'" Id. Gray alleges that this book "was taken from a list of literary selections Rock had approved." Id. at p. 5. Critically acclaimed, "[t]he book features an Ivy League bound black teenager who is a victim of racial profiling: after being thrown to the ground and handcuffed during an encounter with a police officer, he conceives a set of ten imaginary letters to Martin Luther King Jr." Id. The main character asks himself, "What would Dr. King do if he were alive today?" Id.

Gray contends that "[i]n late January 2023, some white parents began to raise complaints to administrators at Charlotte Secondary School that the content in 'Dear Martin' was divisive and injected what they regarded as unwelcome political views on systemic racial inequality into their childrens' classroom." Id. at pp. 5-6. As a result of the parents' complaints, "Gray was informed by the school's principal Keisha Rock that his contract was being terminated effective immediately," on February 2, 2023. Id. at p. 6. With respect to the Board's involvement, Gray alleges that Keisha Rock told him "that the Board had authorized his immediate termination," and that she "had been in constant communication with the [Board], 'all day long.'" Id. The Board, Gray alleges, "ratified or directed [his] termination" – a "textbook" example of "an African American teacher [who] was swiftly terminated over parental concerns from whites, while white teachers have effectively been shielded from the complaints of black families." Id. at p. 9.

2

Gray contends that his termination "sharply deviated from [Charlotte Secondary School's] normal protocols" because the Board is supposed to follow the employee handbook that has in place "a progressive disciplinary approach that begins with verbal counseling, escalating to writeups and final warnings, before culminating in termination as a last resort." Id. at pp. 6-7. Gray says that he was "not given the benefit of a performance improvement plan," which is the usual remedy in cases "of instructional performance issues." Id. at p. 7. He was also denied the benefit of "administration managed dialogue between teachers and parents" – the usual "conflict resolution method in the event of parental concerns around a teacher's actions." Id.

Plaintiff makes clear that he has learned that white teachers have taught lessons on controversial topics, some of which have inspired complaints from black parents, and Charlotte Secondary School has not taken "any disciplinary or corrective steps." Id. at p. 8. He specifically mentions "one complaint [involving] a white arts teacher who made a racially insensitive comment about the color complexion of a black student." Id.

Gray's Complaint contains two claims: (1) the first against the Board only, under 42 U.S.C. §§ 1981 and 1983 for race discrimination; and (2) the second against Charlotte Secondary School only, under 42 U.S.C. § 2000e-2(m) (Title VII) for racially discriminatory termination. Id. at pp. 10-11.

Gray filed a charge of discrimination against Charlotte Secondary School with the Equal Employment Opportunity Commission ("EEOC") on March 14, 2023, receiving a right-to-sue letter on March 20, 2023. The instant lawsuit timely followed Gray's exhaustion of administrative remedies. Defendants filed an "Answer" (Document No. 13) on August 10, 2023. Only the Board moved to dismiss, however, filing their "Motion To Dismiss" (Document No. 14) on August 10, 2023. "Plaintiff's Response In Opposition To Motion To Dismiss By Board Of Directors Of

Charlotte Secondary School" (Document No. 15) was filed August 14, 2023. The Board's "Reply Brief In Support Of Defendant School Board's Motion To Dismiss" (Document No. 19) was filed August 28, 2023.

The pending motion has been fully briefed and is ripe for review and a recommended disposition to the Honorable Robert J. Conrad, Jr.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

"Section 1981 outlaws race discrimination in the making and enforcement of private contracts." Murrell v. Ocean Mecca Motel, Inc., 262 F.3d 253, 257 (4th Cir. 2001). "[A] plaintiff must use § 1983 as a vehicle to assert a § 1981 claim against a state actor" because "§ 1983 is the exclusive federal remedy for violation [by state actors] of the rights guaranteed in § 1981." Chambers v. North Carolina Dep't of Justice, 66 F.4th 139, 142 (4th Cir. 2023) (internal citations and quotations omitted). Therefore, "a plaintiff must meet the requirements of § 1983 to prevail on a" § 1981 claim brought against a state actor. Tigner v. Charlotte-Mecklenburg Schools, 3:18-CV-680-RJC-DSC, 2019 WL 2246601, at *3 (W.D.N.C. Feb. 13, 2019), *overruled on other grounds*, 2019 WL 2237479.

Monell liability applies when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). Pursuant to Monell, there are four theories that support liability pursuant to this claim:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure

5

> to properly train [employees], that 'manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'

Dean v. Campbell, 5:22-CV-167-KDB-DCK, 2023 WL 5281945, at *5 (W.D.N.C. July 14, 2023) (quoting Bailey v. Campbell, 5:22-CV-052-KDB-DSC, 2022 WL 16849126, at *2 (W.D.N.C. Nov. 10, 2022) (internal citations omitted)).

"The question of who possesses final policymaking authority is one of state law." Riddick v. School Bd. of City of Portsmouth, 238 F.3d 518, 523 (4th Cir. 2000). "Under North Carolina law, a school board is the final policymaker with regard to the employment and discharge of school employees." Stevens v. Cabarrus Cty. Bd. of Educ., 514 F. Supp. 3d 797, 809 (M.D.N.C. Jan. 22, 2021). Importantly, "school boards and municipalities are indistinguishable for purposes of § 1983." Riddick, 238 F.3d at 522, n.3.

Defendant's central argument is that Plaintiff's § 1983 claim against the Board should fail because he "has failed to allege any facts to support a finding that the School Board has a policy or custom of racial discrimination which causes his injury." (Document No. 14-1, p. 5). Plaintiff responds that Defendant's argument "construes Monell too narrowly to require either some entrenched policy of discrimination or successive discriminatory acts over time." (Document No. 15-1, p. 6). Plaintiff argues that the Fourth Circuit "has adopted a theory of municipal liability referred to as 'ratification' theory," whereby "the Board's single act of either ratifying or directing a termination is a sufficient foundation for a § 1983 claim." Id. at pp. 6-7 (citing Starbuck v. Williamsburg James City Cty. Sch. Board, 28 F.4th 529, 534 (4th Cir. 2022)).

The undersigned agrees with Plaintiff's argument. Based on the Fourth Circuit's articulation of the ratification theory of municipal liability in Starbuck, "[e]ven 'a single decision taken by the highest officials responsible for setting policy in that area of the government's

business' can render a municipality subject to suit under Monell." 28 F.4th at 533 (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988)).  This is because "an affirmative decision by a final policymaker can serve as a 'policy' under Monell." Starbuck, 28 F.4th at 534.  "Ratification liability does not hold a municipality liable for the actions of subordinate officials;  rather, it holds the municipality liable for *its own decision* to uphold the actions of subordinates." Id.

Here, while Plaintiff alleged that Principal Rock was the individual to inform him of his termination, he alleges "that the Board had authorized his immediate termination," and Rock was "in constant communication with the Board."  (Document No. 1, p. 6).  At this early stage of the litigation, before discovery has even commenced, this single alleged act plausibly supports a § 1983 claim based on rights contained in § 1981.  The undersigned is guided by the principle that civil rights cases should not be dismissed too early, "unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." Starbuck, 28 F.4th at 534 (quoting Edwards v. City of Greensboro, 178 F.3d 231, 244 (4th Cir. 1999));  see also Woods v. City of Greensboro, 855 F.3d 639, 652 (4th Cir. 2017) ("discrimination claims are particularly vulnerable to premature dismissal because civil rights plaintiffs often plead facts that are consistent with both legal and illegal behavior, and civil rights cases are more likely to suffer from information-asymmetry, pre-discovery").  Thus, the undersigned will respectfully recommend that Defendant's motion to dismiss be denied.

## IV.  RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendant Board of Directors of Charlotte Secondary School Inc.'s "Motion To Dismiss" (Document No. 14) be **DENIED**.

7

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: March 29, 2024

*/s/ David C. Keesler*
David C. Keesler
United States Magistrate Judge